FREDERICK M. BALLOU *vs.* WELCOME FARNUM & others.

In an action to recover damages for a personal injury, the plaintiff may introduce evidence to show the kind and amount of mental and physical labor which he was accustomed to do before receiving the injury, as compared with that which he has been able to do since, for the purpose of aiding the jury to determine what compensation he should receive for his loss of mental and physical capacity.

TORT against the trustees named in a mortgage executed by the Norfolk County Railroad Company upon their railroad and franchise, seeking to recover for a personal injury sustained by the plaintiff by being run against by a car of the defendants. The declaration alleged that by this act of the defendants he was hurt and put to great expense; and, being before able to earn large sums by his business, was rendered unable to labor in and conduct his business, and deprived of the earnings which he would otherwise have made. No objection was made to the form of the declaration.

At the second trial in this court, before *Gray*, J., after the decision reported in 9 Allen, 47, the plaintiff was allowed, in order to show his bodily and mental capacity before the accident, and the extent of his injury, to introduce evidence that before the accident he owned and carried on a large mill for the manufacture of fancy cassimeres; used to select the patterns and colors,

which required constant attention and thought; bought part of the stock, hired the workmen, and agreed with them for their wages; superintended the putting in of machinery; conducted an extensive correspondence, and twice a year took an account of stock; and that since the accident he had been able to do very little that required mental application or physical labor.

The plaintiff then proposed to ask witnesses of suitable knowledge and experience whether the work at his mill was as well done after the accident as before; whether after the accident the business was conducted at a profit or a loss; what were the value and the usual compensation, at the time of the accident and since, of such services as the plaintiff performed before the accident, and of such as he could perform after it; and what compensation a person of the skill and capacity of the plaintiff would command in the market at the time of the accident and since. But all this testimony was objected to by the defendants, and excluded.

The defendants requested the presiding judge to instruct the jury that the plaintiff, if his business capacity was superior to that of men in general, was not on that account entitled to greater damages. The judge declined so to instruct the jury, and instructed them that if the defendants were liable in this action the plaintiff was entitled to recover, as part of his damages, compensation for his loss of physical and mental capacity, so far as proved to have been caused solely by the defendants' negligence; that there was no rule of law that one man was or was not exactly like another; that it was a question of fact for the jury what injury the plaintiff had suffered by the defendants' negligence, not what any other man had suffered; that the evidence of his occupation and capacity was admissible only in order to enable the jury to judge of the injury to his capacity; that this was an action for an injury to the man, and not for interfering with his business, and the damages must be limited to the personal injury to him occasioned by the defendants' negligence.

The jury returned a verdict for the plaintiff, with $9687.50 damages; and the case was reported for the determination

of the whole court, upon the competency of the above evi-
dence, and the correctness of the above instructions.

*F. H. Dewey & E. B. Stoddard,* for the defendants. The law
makes no distinction between men, and damages sustained by
them are not to be measured by the wealth, occupation or ca-
pacity of the person injured. Evidence of the plaintiff's wealth,
in owning a large mill, was improperly admitted. Evidence
that he was a manufacturer, carrying on a large mill, afforded
no evidence of the amount of damage sustained. Evidence
that he was skilled in his occupation and able to perform a large
amount of work therein does not prove any special damages
sustained by him, without evidence that his occupation was
profitable to him. The indemnity to which the plaintiff is enti-
tled must be limited to such damages as were the direct and
natural consequence of the wrongful act. Damages estimated
upon the ground of loss of peculiar skill and business capacity
must in their nature be conjectural and uncertain. The position
and character of parties are admissible only when involved in
the nature of the action, and when the injury is increased by
them. 2 Greenl. Ev. § 269. The statute penalty upon a rail-
road company, in case of death resulting from their carelessness,
is not varied by the station or capacity of the deceased. *Carey
v. Berkshire Railroad,* 1 Cush. 480. If different passengers are
entitled to different amounts of damages for similar injuries,
railroad companies must charge a higher rate of fare for
those whose occupation or capacity will entitle them to heavy
damages.

*G. F. Hoar, (P. E. Aldrich* with him,) for the plaintiff.

COLT, J. The plaintiff in this action is entitled to recover as
damages compensation for all such personal injury to him as
was the necessary and proximate consequence of the alleged
wrongful act of the defendants, and for such other injury as was
the direct and natural, though not the necessary consequence
thereof, and which is specially alleged in his declaration. It is
averred that, being a manufacturer, before the accident able to
earn large sums of money, he was by the injury rendered unable
to labor in and conduct his business. No objection was taken

to the form of the allegation, and it is to be regarded as a sufficient statement that the injury had produced a diminution of capacity, either mental or physical or both. For the purpose of proving the extent of the injury, the plaintiff was permitted to introduce evidence to show his previous occupation as a manufacturer, the nature of the duties he was accustomed to perform, and that since the accident he was able to do very little that required mental application or physical labor; and it is now insisted that this evidence was improperly admitted. It is said that if the jury were permitted to take into consideration as an element of damage the loss of intellectual power and capacity of the plaintiff for business, the inquiry must of necessity include an estimate of the future profits of the business in which the plaintiff was or might thereafter be engaged; that such an estimate can furnish no safe basis for fixing the compensation, and must at best be conjectural and uncertain.

In general the profits of a future business are indeed too remote and uncertain to be relied on as an element in the estimate of damages. It does not follow that superior education, experience or ability in the management of business insures pecuniary success. The uncertainty of the continuance of health and life, with the taste and disposition for such pursuits, and especially the proverbial uncertainty of trade, preclude the making of any estimate which can have weight beyond the merest conjecture. If this evidence had been offered by the plaintiff with a view of increasing the damages on account of his wealth or peculiar skill as a manufacturer, or the large profits he would be able to realize in his future business, and it had been admitted for that purpose, the argument of the defendant would be entitled to further consideration. But it was offered only to show the extent of the personal injury by reason of the loss of mental vigor and endurance thereby occasioned. The diminution, whatever it was, could only be shown by evidence of strength before and weakness afterwards as manifested in the ordinary pursuits of the plaintiff. The presiding judge admitted it only for this restricted purpose, and carefully instructed the jury that it was admissible only in order to enable them to

judge of the injury to his capacity, and that the action was for an injury to the man, and not for interfering with his business.

In all actions of this description, and particularly in those in which damages for mental suffering or loss of mental capacity are sought to be recovered, the difficulty of furnishing by evidence the means of measuring the extent of the injury, so that the jury may be able to award with any certainty a pecuniary equivalent therefor, is at once apparent; and in this difficulty the defendants find argument for the support of their objection. But the answer is, that the law does not refuse to take notice of such injury on account of the difficulty of ascertaining its degree. In a variety of actions founded on personal torts, and in many where no positive bodily harm has been inflicted, the plaintiff is permitted to recover for injury to the feelings and affections, for mental anxiety, personal insult, and that wounded sensibility which follows the invasion of a large class of personal rights. The impossibility, in all such cases, of precisely appreciating in money mental suffering of this description is certainly as great as is suggested where the question is what shall be allowed for a permanent injury to mental capacity. The compensation for personal injury occasioned by the negligence or misconduct of others, which the law promises, is indemnity, so far as it may be afforded in money, for the loss and damage which the man has suffered as a man. Some of its elements may be bodily pain, mutilation, loss of time and outlay of money; but of more important consideration oftentimes is the mental suffering and loss of capacity which ensues. Of these several items of injury, if compensation is to be confined to those capable of accurate estimate, it will include but a small part, and must exclude all those injuries commonly regarded as purely physical; for the difficulty in ascertaining a pecuniary equivalent for the last named is precisely the same and quite as great as any that have been suggested. In fact, it will be found impossible to fix a limit to injuries of a physical nature so as to exclude from consideration their effect on the mental organization of the sufferer. The intimate union of the mental and physical, the mutual dependence of each organization — if

indeed, for any practical purpose in this regard, they can be considered as distinct — the direct and mysterious sympathy that exists whenever the sound and healthy condition of either is disturbed, render useless any attempt to separate them for the purpose indicated. It is obvious, upon a moment's reflection, that the powers and usefulness of the limbs and senses in ministering to the necessities and pleasures of the individual are to a great extent to be measured by the knowledge, experience and taste which he possesses, and which are purely qualities of the mind. Take the case of an injury to the right arm of a skilful painter or musician, for example. To show the extent of his injury, the plaintiff produces evidence of the use he was able to make of the arm before and after the accident. From such evidence alone could the jury judge of the plaintiff's loss. Such proof is constantly resorted to without objection in these cases. And still the chief value of the limb to its possessor consists in its skilful use, as controlled and directed by the cultivated taste and education of the plaintiff; and the chief loss to him is the loss of the power to make these purely intellectual endowments available for his pleasure or benefit. Or suppose the injury be to one of the five senses. Can any rule be adopted which shall limit the damages to that portion of the injury suffered which may be called only bodily ?

There is a class of injuries, especially those which affect the brain and nervous system, to which this case seems to have belonged, where, by common observation, the most satisfactory symptom and proof of the physical injury is to be found in the weakness and derangement of the intellectual faculties. Upon the whole, then, upon principle we can see no error in the admission of the evidence, with the accompanying instructions. In the main it must always be left to the discretion of the jury to give such reasonable damages in these cases as in their opinion will afford compensation for the entire injury which the plaintiff proves he has sustained, subject to that power which remains in the court to set aside the verdict in those cases where the damages awarded are so excessive as to warrant the inference that some passion or prejudice or other improper considerations influenced them.

We find two authorities in the supreme court of the United States, which go further than the necessities of this case require in support of the doctrines relied on. The first is the case of *Wade* v. *Leroy*, 20 How. 43. The declaration alleged that the plaintiff was injured by a blow upon the head, and in consequence of the wound his brain was affected and his memory and understanding impaired; that he was detained thereby and had been hindered and prevented for a long period from attending to his affairs, and lost and was deprived of great gains. The plaintiff offered to prove at the trial that before and at the time of the injury he was largely engaged in the business of distilling turpentine, and that after the accident he could not safely attend to any business. To this the defendant objected, on the ground that the declaration did not contain any specification of such business, or of its nature or extent, or any statement that the plaintiff was obliged to and did relinquish the same. The judges of the circuit court were divided in opinion upon the admissibility of the evidence, but it was held by the court admissible. Campbell, J., said that the evidence conduced to prove that the plaintiff before the time of the injury had been concerned in conducting a business that required a degree of mental and bodily vigor, and that his time was of some pecuniary value; or that he had suffered a loss of some profit; and would certainly assist a jury to determine that the plaintiff had sustained an injury of no slight character. These were the direct and necessary consequences of the injury. This decision was cited and approved by Nelson, J., in *Nebraska City* v. *Campbell*, 2 Black, 590. See also *Canning* v. *Williamstown*, 1 Cush. 451; *Baldwin* v. *Western Railroad*, 4 Gray, 333; Sedgw. on Dam. (3d ed.) 587.

The cases in New York not only sustain the grounds upon which we place this decision, but some of them go further than the true rule of damages in such cases would seem to require. *Lincoln* v. *Schenectady &c. Railroad*, 24 Wend. 434. *Ransom* v. *New York & Erie Railroad*, 15 N. Y. 415. *Tilley* v. *Hudson River Railroad*, 24 N. Y. 471. *Judgment on the verdict.*